**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiff
DEZSANEE JONES

### UNITED STATES DISTRICT COURT FOR THE
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEZSANEE JONES, | Case No. 5:22-cv-01764-SSS-SP |
| Plaintiff, | *Honorable Sunshine S. Sykes* |
| vs. | *Hon. Mag. Judge Sheri Pym* |
| CITY OF RIVERSIDE; TAYLOR LAPOINT; MIKE SMITH; and DOES 3-10, inclusive, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER** |
| Defendants. | |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    RELEVANT PROCEDURAL HISTORY ................................................. 2

III.   LEGAL STANDARD ............................................................................... 7

IV.    THE COURT SHOULD DENY DEFENDANTS' EX PARTE
       APPLICATION TO MODIFY THE SCHEDULING ORDER ...................... 8

V.     DEFENDANTS WILL NOT SUFFER ANY PREJUDICE IF THEIR
       EX PARTE APPLICATION IS DENIED ...................................................... 11

VI.    THE COURT SHOULD LIMIT DISCOVERY SHOULD IT FIND
       GOOD CAUSE TO GRANT DEFENDANTS' EX PARTE
       APPLICATION ......................................................................................... 13

VII.   CONCLUSION ....................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Arredondo v. University of La Verne*,
Case No. 2:20-cv-07665-MCS-RAO, 2022 WL 423389 (C.D. Cal. Jan. 11, 2022)...................................................................................................13

*Azam v. Brown*,
714 F. App'x 663 (9th Cir. 2017) ...........................................................7

*Erichsen v. Cnty. of Orange*,
677 F. App'x 379 (9th Cir. 2017) ...........................................................7

*Glenn v. Washington County*,
673 F.3d 864 (9th Cir. 2011) ................................................................12

*Graham v. Connor*,
490 U.S. 386 (1989) .....................................................................11, 12

*Hayes v. Cnty. of San Diego*,
736 F.3d 1223 (9th Cir. 2013) ...............................................................12

*Johnson v. Mammoth Recreations*,
975 F.2d 604 (9th Cir. 1992) ..................................................................8

*Lopez v. City of Riverside, et al.*, 5:21-cv-02140-PSG-JEM, Dkt. No. 172.............10

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
218 F.R.D. 667 (C.D. Cal. 2003) ............................................................8

*Merck v. Swift Transportation Co.*,
No. CV-16-01103-PHX-ROS, 2018 WL 4492362 (D. Ariz. Sept. 19, 2018) 11

*Mission Power Eng'g Co. v. Continental Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995)......................................................7, 10

*Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004)..................................12

*Tabares v. City of Huntington Beach*,
988 F.3d 1119 (9th Cir. 2021)...............................................................12

*Tennessee v. Garner*,
471 U.S. 1, 26 (1985) .........................................................................12

*Zivkovic v. Southern California Edison Co.*,
302 F.3d 1080 (9th Cir. 2002)................................................................8

## <u>Rules</u>

Fed. R. Civ. P. 16.................................................................................8

Fed. R. Civ. P. 26.................................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION

### I.    INTRODUCTION

This civil rights case arises out of the shooting of unarmed Plaintiff Dezsanee Jones ("Plaintiff") by City of Riverside police officer Taylor Lapoint ("Defendant Lapoint") on September 20, 2021 in Riverside, California. On that date, Officer Lapoint and his partner, Officer Mike Taylor ("Officer Taylor"), responded to a call at 807 Blaine Street in Riverside, California regarding a male with a gun inside the caller's apartment. The male subject, later identified as Resan Bingham ("Mr. Bingham"), was described as wearing a white t-shirt and black pants. When Defendant Lapoint and Officer Taylor arrived at the scene, they located a backpack containing a firearm in the bushes underneath Plaintiff's apartment. The officers then went to make contact with Plaintiff by knocking on her apartment door. When Plaintiff did not respond immediately, a decision was then made to kick Plaintiff's door in. Defendant Lapoint discharged his firearm immediately after kicking the door in, striking an unarmed Plaintiff who was standing in her apartment in front of the door. Plaintiff was wearing a dark shirt and bright green pants and had not made any movements that could be considered to pose an immediate threat of death or serious bodily injury.

After the incident, the City of Riverside released a Critical Incident Video of the incident and shooting.[1] The press release and video alleged that Mr. Bingham had been involved in the events that preceded Plaintiff's encounter with law enforcement and was arrested for involvement. Thus, even before discovery opened

---

[1] *Critical Incident Video Release – Officer Involved Shooting Investigation for September 20, 2021*, RIVERSIDECA.GOV (September 24, 2021), https://riversideca.gov/press/critical-incident-video-release-officer-involved-shooting-investigation-september-20-2021.

in this case, Defendants were aware of Mr. Bingham's involvement in the events that took place prior to Plaintiff's encounter with law enforcement.

Plaintiff contends that Defendant Lapoint used excessive and unreasonable force and was negligent in shooting her. Plaintiff brings federal claims pursuant to 42 U.S.C. § 1983 and related state law claims against Defendants City of Riverside and Officer Lapoint for the use of excessive deadly force against Plaintiff and seeks compensatory damages.

Defendants have now filed an *Ex Parte* application seeking an order to modify the Scheduling Order—eleven days before the fact discovery cut-off. Plaintiff opposes Defendants' *Ex Parte* application due to Defendants' lack of diligence in conducting discovery to meet the deadlines set out in the Court's Scheduling Order and Amended Scheduling Order, eleventh-hour discovery requests, and their role in creating the circumstances that brought on their Ex Parte Application, and respectfully requests the Court deny Defendants' *Ex Parte* application in its entirety.

## II.    <u>RELEVANT PROCEDURAL HISTORY</u>

On October 7, 2022, Plaintiff filed her lawsuit arising out of this incident, naming the City of Riverside and DOES 1-10 as defendants. (Dkt. No. 1). On October 11, 2022, Plaintiff's counsel received an e-mail from defense counsel, Debra Cook, representing that she had been assigned as lead counsel on this matter. On November 23, 2022, defense counsel sent an e-mail to Plaintiff's counsel requesting meet and confer to discuss the City's responsive pleadings and a potential Rule 12(b) motion to dismiss or Rule 56 motion for summary judgment. On November 29, 2023, Plaintiff's counsel replied to defense counsel's email to set up a date and time and suggested that they use the meeting as an opportunity to also conduct their Rule 26 early meeting of counsel. (*See* Ex. 1 to Le Decl.) The parties held their meet and confer on the City' responsive pleadings and contemplated motions as well as their Rule 26 early meeting of counsel on December 2, 2022.

(*Id.*). During the meeting, the parties agreed to exchange initial disclosures on December 16, 2022. Plaintiff subsequently sent her initial disclosures on the agreed-upon date and granted Defendant City an extension until January 6, 2023 for its initial disclosures.

On December 8, 2022, Plaintiff filed an amended complaint naming Taylor Lapoint and Mike Smith as individual defendants. (Dkt. No. 13). On that same day, Plaintiff also sent out deposition notices for the deposition of Taylor Lapoint and Mike Smith for January 6, 2023. (*See* Ex. 2 to Le Decl.). On December 15, 2022, Plaintiff propounded written discovery to the City of Riverside. (*See* Ex. 3 to Le Decl.). The depositions of Taylor Lapoint and Mike Smith were taken on January 6, 2023. (Le Decl. ¶ 3). Defendants also filed a Motion to Dismiss that same day. (Doc No. 17). The parties were subsequently able to meet and confer further on Defendants' Motion and filed a stipulation on January 12, 2023, dismissing Mike Smith as a defendant and dismissing Plaintiff's Second Claim of Relief for Denial of Medical Care; Third, Fourth and Fifth Claims of Relief for Municipal Liability; and striking Plaintiff's request for punitive damages against the City. (Doc No. 19). As a result of the Stipulation, Defendants withdrew their Motion to Dismiss. (Dkt. No. 21). On April 17, 2023, the Court issued a Civil Trial Order and set case management dates. (Dkt. No. 32). Among those dates, the Court set the Fact Discovery Cut-Off for October 2, 2023; Initial Expert Disclosures for October 13, 2023; Rebuttal Expert Disclosures for October 27, 2023; and Last Day to Hear Motions for January 26, 2024. (*Id.* at 4).

On March 30, 2023, Defendants filed a Motion for Leave to File a Third-Party Complaint against Resan Bingham. (Dkt. No. 28). Defendants alleged in their Motion that on information and belief, "Mr. Bingham made Plaintiff fear for her safety prompting her to call 911 and then prevented and/or instructed Plaintiff not to open the door once the police arrived…" (Dkt. No. 28 at 4). Defendants further cited Mr. Bingham's guilty plea to criminal charges for falsely imprisoning Plaintiff and

willfully and lawfully preventing or dissuading Plaintiff from reporting a suspect crime or responding to an officer's lawful inquiry. (*Id.*). Plaintiff timely opposed the motion and the Court ultimately denied Defendants' motion.

On June 21, 2023, Defendant City propounded Requests for Production of Documents (Set One) on Plaintiff. (*See* Ex. 4 to Le Decl.). Plaintiff timely served responses to those Requests. (Le Decl. ¶5). On August 17, 2023, *a month-and-a-half before the fact discovery cutoff*, Rebecca McKee-Reimbold from defense counsel's office reached out to Plaintiff's counsel and requested a brief continuance of the trial date or extension of the discovery cut-off due to lead Ms. Cook's unavailability as she was engaged in a month-long trial after which she was expected to observe several religious holidays. (*See* Ex. A to Cook Decl.). After meeting and conferring, the parties agreed to a short continuance of all discovery dates as well as the motion hearing date. (*Id.*). On August 29, 2023, the parties filed their Stipulation and Request for Order to continue the discovery dates and motion hearing date approximately 2 months out. (Dkt. No. 38). On that same day, Defendants also unilaterally noticed the deposition of Plaintiff for September 28, 2023 (four days before the fact discovery cut-off) and served on Plaintiff a set of Requests for Admissions. (*See* Ex. 5 to Le Decl.). On August 30, 2023, a little over a month before the fact discovery cut-off, Defendants served on Plaintiff their first set of Interrogatories, with a response deadline of September 29, 2023 (three days before the fact discovery cut-off). (*See* Ex. 6 to Le Decl.).

On September 3, 2023, the Court issued an Order granting the parties' stipulation to continue certain case management dates and continued the Fact Discovery Cut-Off to December 1, 2023; Initial Expert Disclosures to December 13, 2023; Rebuttal Expert Disclosures to January 12, 2024; Expert Discovery Cut-Off to January 26, 2024; and the Last Day to Hear Motions to February 23, 2024. (*See* Dkt. Nos. 39, 41). On September 15, 2023, Plaintiff's counsel informed defense counsel that Ms. Jones was not available for her September 28, 2023 noticed deposition and

offered October 9, 16, 23, and 30 as alternative dates. (*See* Ex. 5 to Le Decl.).

Plaintiff's counsel was informed that Ms. Cook would be unavailable until October

10, 2023 but that a date for Plaintiff's deposition would be provided upon her return.

(*Id.*). On September 18, 2023, defense counsel's office emailed Plaintiff's counsel

and requested that Plaintiff's counsel submit clearance forms to CDCR in order for

Defendants to take the deposition of Mr. Bingham at Corcoran State Prison. (*See* Ex.

7 to Le Decl.). Plaintiff's counsel subsequently complied with the request. (Le Decl.

¶ 8). On October 11, 2023, defense counsel requested that Plaintiff hold the date of

October 30, 2023 for her deposition. (Ex. 8 to Le Decl.). October 30, 2023 came and

went without any follow up or notice from defense counsel. (Le Decl. ¶ 9).

Finally, on November 8, 2023—*less than a month before the close of fact discovery*—defense counsel's office reached out to Plaintiff's counsel to request availability for the week of November 27-December 1, 2023 for the depositions of Plaintiff and Mr. Bingham. (*See* Ex. 9 to Le Decl.). The next day, defense counsel sent an e-mail to meet and confer on the remaining discovery and Defendant Lapoint's intent to file a Motion for Summary Judgment based on qualified immunity.[2] (*See* Ex. 10 to Le Decl.). Defense counsel informed Plaintiff's counsel that she was expected to start trial on November 17, 2023 and that the trial was anticipated to last for two weeks. (*Id.*). Defense counsel proposed continuing all pretrial dates by 30 days to complete the remaining discovery. (*Id.*).

Plaintiff's counsel informed defense counsel that Ms. Jones was available December 1, 2023 for her deposition and that Plaintiff's counsel was available November 28, 29, and 30 for the deposition of Mr. Bingham. (*Id.*). With those deposition dates secured, Plaintiff's counsel did not believe there was a need to

---

[2] Plaintiff contends Defendant Lapoint's contemplated Motion for Summary Judgment is without merit. In fact, Plaintiff is contemplating on filing a Motion for Summary Judgment herself based on the undisputed facts of this case.

extend the case management dates and therefore declined to enter into such a stipulation. (*Id.*). Defense counsel then informed Plaintiff's counsel that they were *not available* December 1, that they *had not cleared dates* for the deposition of Mr. Bingham, and *for the first time since the inception of the case*, informed Plaintiff's counsel that they wanted to have Plaintiff submit to an Independent Medical Examination and needed Plaintiff's medical records for that purpose. (*Id.*; Le Decl. ¶ 11).

Plaintiff had already produced responsive medical records for the treatment of her injuries sustained from the incident in her responses to Defendant City's Request for Production (Set One) back in July 2023. (Le Decl. ¶ 11). Moreover, Defendants had subpoenaed additional medical records of Plaintiff's with a production date set for November 10, 2023. (*Id.*). Plaintiff's counsel informed defense counsel of such and reiterated that Plaintiff was willing to work with defense counsel's availability for the last week of November to complete her deposition and Mr. Bingham's deposition. (*See* Ex. 10 to Le Decl.).

On November 10, 2023, defense counsel informed Plaintiff's counsel Defendants' desire for Plaintiff to submit to a Defense Medical Examination ("DME") with their retained physician on November 30, 2023 at 12:30 p.m. Defense counsel did not specify the manner, conditions, and scope of the examination as required by Federal Rules of Civil Procedure, Rule 35. (*See* Ex. 10 to Le Decl.). Defense counsel further requested that Plaintiff appear for her deposition on November 29, 2023 or possibly December 1, 2023 and reiterated that they had yet to clear dates for Mr. Bingham's deposition. (*Id.*).

On November 13, 2023, defense counsel informed Plaintiff's counsel that she had received her trial schedule, that the court conducting her trial was dark on Fridays, requested that Plaintiff submit to a DME on November 30, 2023 and be deposed on December 1, 2023. (Le Decl. ¶12; *see* Ex. 10 to Le Decl.). Plaintiff's counsel replied, indicating that Plaintiff, in the spirit of cooperation and good faith,

1  was willing to submit to a DME on November 30, 2023, subject to the parties

2  entering into and filing a proposed stipulation with the Court regarding the manner,

3  conditions, and scope of the examination pursuant to Rule 35. (*Id.*). Plaintiff further

4  confirmed December 1, 2023 for Plaintiff's deposition. (*Id.*). Plaintiff's counsel

5  declined agreeing to stipulate the extending all dates on the belief that there is no

6  good cause for the extensions. (*Id.*).  On November 15, 2023, Defendants

7  unilaterally noticed the deposition of Resan Bingham for December 20, 2023—after

8  the fact discovery cut-off date of December 1, 2023. (*See* Ex. 11 to Le Decl.).

9  Plaintiff served her objection to Defendants' deposition notice on November 17,

10  2023. (Le Decl. ¶ 14). On November 20, 2023, the parties filed a Stipulation for

11  Physical Examination of Plaintiff by Defense Expert with the Court, setting the

12  terms and conditions of Plaintiff's November 30, 2023 DME. (Dkt. No. 42).

## III.  <u>LEGAL STANDARD</u>

14      A proper ex parte motion contains two distinct parts: "[t]he first part should

15  address only why the regular noticed motion procedures must be bypassed [and t]he

16  second part consists of papers identical to those that would be filed to initiate a

17  regular noticed motion." *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F.

18  Supp. 488, 492 (C.D. Cal. 1995). The granting of *ex parte* relief requires an

19  evidentiary showing of good cause that: (1) "the moving party's cause will be

20  irreparably prejudiced if the underlying motion is heard according to regular noticed

21  motion procedures"; and (2) "the moving party is without fault in creating the crisis

22  that requires ex parte relief, or that the crisis occurred as a result of excusable

23  neglect." *Mission Power*, 883 F. Supp. at 492; *see, e.g.*, *Azam v. Brown*, 714 F.

24  App'x 663, 665 (9th Cir. 2017) (recognizing *Mission Power* as setting forth standard

25  for *ex parte* relief); *Erichsen v. Cnty. of Orange*, 677 F. App'x 379, 380 (9th Cir.

26  2017) (mem.) (noting that appellants failed to meet threshold requirement for *ex

27  parte* relief by failing to establish that they were "without fault in creating the crisis

28  that requires ex parte relief" (quoting *Mission Power*, 883 F. Supp. at 492)).

Under Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). A party seeking to modify the schedule must show good cause and diligence in meeting Federal Rule of Civil Procedure 16's requirements. *See* Fed. R. Civ. P. 16 advisory committee notes (1983 amendment); *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992) (Rule 16(b)'s "good cause" standard focuses on the diligence of the party seeking modification of the scheduling order). "A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she was unable to meet the timetable set forth in the order. *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003) (citing *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)); *Johnson*, 975 F.2d at 609. "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 875 F.2d at 609. "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion" to modify a scheduling order. *Id.* However, "[i]f the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic,* 302 F.3d at 1087 (citation omitted); *see also Johnson,* 975 F.2d at 609.

## IV. <u>THE COURT SHOULD DENY DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE SCHEDULING ORDER</u>

The circumstances that led to Defendants' filing of their *Ex Parte* Application were solely created by Defendants and Defendants were not diligent in their efforts to comply with the Court's initial scheduling order and subsequent modified scheduling order. Discovery opened in this case after the December 2, 2022 early meeting of counsel. *See* Fed. R. Civ. P. 26(d)(1). Defendants did not make any effort to initiate any discovery until Defendant City's first set of Requests for Production of Documents was sent on June 21, 2023—<u>more than six months after discovery had opened</u>. Defendants' next discovery efforts did not occur until August 29, 2023,

when Defendants unilaterally noticed Plaintiff's deposition and sent out a set of Requests for Admissions. This only occurred subsequent to the parties agreeing to continue the discovery deadlines and motion hearing deadline two months out in order to accommodate defense counsel's trial schedule and religious holidays.

On September 18, 2023, Plaintiff's counsel contacted defense counsel to inform her that Plaintiff was not available on the date of her unilaterally noticed deposition and offered several alternative dates. Over a month and a half passed before Plaintiff's counsel was contacted about rescheduling Plaintiff's deposition on November 8, 2023, and by that time, the discovery deadline was less than a month away. Despite these last-minute efforts by Defendants, Plaintiff has attempted to cooperate in good faith and flexibly worked with defense counsel's schedule in order to schedule Plaintiff's deposition prior to the discovery cutoff date and even going so far as agreeing to submit to a DME prior to the discovery cutoff despite only being informed of Defendants' desire for one for the first time on November 9, 2023. The parties have now come to an agreement that Ms. Jones will submit to a DME on November 30, 2023 and will be deposed on December 1, 2023. The parties have also come to an agreement regarding the terms and conditions of the DME pursuant to Rule 35.

As for the deposition of Mr. Bingham, defense counsel's office first notified Plaintiff's counsel of their desire to depose Mr. Bingham on September 18, 2023, despite knowing about his involvement in this incident as far back as September 24, 2021—a year prior to the inception of this case. Despite Defendant's desire to depose Mr. Bingham, Defendants did not attempt to set Mr. Bingham's deposition until their November 8, 2023 email—less than one month before the discovery cutoff—and as late as of November 10, 2023, had not cleared dates with CDCR for Mr. Bingham's deposition. Last week on November 15, 2023, Defendants finally sent, for the first time in the discovery process, a notice for Mr. Bingham's deposition, for a date *after* the discovery cut-off (December 20, 2023).

Accordingly, Defendants' *Ex Parte* Application should be denied because the circumstances that have led Defendants to file this *Ex Parte* Application are solely of their own creation and due to their lack of diligence in the discovery process. As the district court noted in *Mission Power*,

> …merely showing that trial is fast approaching and that [discovery is still outstanding] is insufficient to justify ex parte relief. The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period…Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have…

*Mission Power*, 883 F. Supp. at 492-93 (cleaned up). Here, Defendants could have, and should have, served discovery requests and noticed their desired depositions earlier in the discovery period. Defendants contend that "[a] series of unexpected scheduling events occurred that could not have been anticipated by Defendants beginning in August, 2023 that caused a ripple effect resulting in the inability to complete pretrial discovery in this matter," (Defs.' Application at 9)[3], but have failed to explain, as required by the Court's Civil Trial Order, (*see* Doc No. 32 at 19-20), why Defendants could not have conducted discovery prior to August 2023, especially considering discovery opened in December 2022. *Cf. Merck v. Swift Transportation Co.*, No. CV-16-01103-PHX-ROS, 2018 WL 4492362, at *2 (D. Ariz. Sept. 19, 2018) ("a party demonstrates good cause by acting diligently to meet

---

[3] One reason Defendants provide for their failure to diligently conduct discovery in this case since August 2023 is due to the pending discovery in *Xavier Lopez v. City of Riverside*, case no. 5:21-cv-02140-PSG-JEM, a case in which the district court declined to grant an extension of the discovery and case management dates. (Defs.' Application at 10). Plaintiff notes that in *Lopez*, the district court denied defense counsel's request to continue the case management dates because the court found that, like in this case, the defendants were <u>not diligent</u> in pursuing depositions and other discovery matters in advance of the deadlines set by the court. *See Lopez v. City of Riverside, et al.*, 5:21-cv-02140-PSG-JEM, Dkt. No. 172, at 5-7; Ex. 12 to Le Decl.

1    the original deadlines set forth by the court."). Accordingly, Defendants' *Ex Parte*

2    Application to continue the pre-trial dates and pre-trial conference should be denied

3    as Defendants were not diligent in their discovery efforts and waited until it was too

4    late to bring a regularly-noticed motion to propose the continuation of those dates.

## V.    DEFENDANTS WILL NOT SUFFER ANY PREJUDICE IF THEIR EX PARTE APPLICATION IS DENIED

7      Whether or not Plaintiff will suffer prejudice if the Court were to modify the

8    Scheduling Order is of little importance to the inquiry of whether the Court should

9    grant Defendants' *Ex Parte* Application. Because Defendants were not diligent in

10    their discovery efforts, their Application should be denied. Moreover, Defendants

11    will not suffer any prejudice from a denial of their request to modify the Scheduling

12    Order. Plaintiff's deposition and DME have been scheduled and confirmed for dates

13    prior to the current fact discovery cut-off. Moreover, this incident was captured on

14    video, by Defendant Lapoint's body worn camera. It is undisputed that Plaintiff was

15    not the subject of the call, did not match the description of the subject of the call,

16    and was unarmed at the time of the shooting. Defendants contends that the

17    deposition of Resan Bingham is needed because "Bingham is a key percipient

18    witness in this case as his actions and criminal threats precipitated the law

19    enforcement encounter at issue in this action." (Defs.' Application at 11). But the

20    specific details of Mr. Bingham's actions that precipitated the law enforcement

21    encounter is irrelevant to evaluating Plaintiff's claims.

22      Since the United States Supreme Court first elucidated the Fourth

23    Amendment reasonableness standard in police shooting-death cases, lower courts

24    and juries have been required to confine their inquiry to the information known to

25    the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396

26    (1989). "The clarity of hindsight cannot provide the standard for judging the

27    reasonableness of police decisions made in uncertain and often dangerous

28    circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985).

In *Glenn v. Washington County*, 673 F.3d 864, 873 (9th Cir. 2011), the Ninth Circuit reiterated that information unknown to an officer at the time of his use of force – or information *acquired after the incident* by investigators or during discovery – cannot be considered. The Ninth Circuit stated that "[w]e cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways." *Id.* (citing *Graham*, 490 U.S. at 396). This prohibition also applies when evaluating California state law battery and negligence claims arising out of the same conduct and use of force. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) (applying California negligence law); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021).

The issue in this case is whether Defendant Lapoint used excessive or unreasonable force in light of the circumstances he was confronted with and the facts known to him. Defendant Lapoint did not witness Mr. Bingham's actions and did not have any specific knowledge of what Mr. Bingham did besides what was communicated to him regarding the call by dispatch. (Ex. 13 to Le Decl., Lapoint Dep., 18:10-12, 26:2-14, 65:19-23). Indeed, Defendant Lapoint admitted in his deposition that after the shooting he did not feel the need to search Mr. Bingham because at that time, he did not believe Mr. Bingham to be the subject of the call. (Ex. 13 to Le Decl., Lapoint Dep. 59:5-9). Moreover, the Court denied Defendant's Motion for Leave to File a Third-Party Complaint against Mr. Bingham and thus, Mr. Bingham's liability is not at issue. Additionally, Plaintiff does not plan on calling Mr. Bingham at trial and would object to Defendants' attempt to call Mr. Bingham at trial because Mr. Bingham's testimony is irrelevant to the issues in this case and would be more prejudicial than probative. Accordingly, Mr. Bingham's specific actions prior to the law enforcement encounter are not relevant to any claims or defenses and Defendants have not explained how Mr. Bingham's

deposition is necessary for Defendants' preparation at trial or for their expert witnesses to complete their reports. *See Arredondo v. University of La Verne*, Case No. 2:20-cv-07665-MCS-RAO, 2022 WL 423389, at *1 (C.D. Cal. Jan. 11, 2022) (denying ex parte application to extend expert discovery deadlines because the moving party failed to make a showing that the pending discovery "is information for which expert testimony will be necessary and on which the expert's conclusions will rely.").

## VI. THE COURT SHOULD LIMIT DISCOVERY SHOULD IT FIND GOOD CAUSE TO GRANT DEFENDANTS' EX PARTE APPLICATION

In the event that the Court finds good cause to grant Defendants' Application to modify the Scheduling Order, the Court should limit Defendants' ability to conduct discovery to Plaintiff's deposition and DME only. Defendants argue that one of the reasons the Scheduling Order should be modified, despite Plaintiff's deposition and DME having been confirmed for dates prior to the current fact discovery cut-off, is because "to the extent there is any percipient witness identified in the deposition, there would be no time to take further depositions without reopening discovery" and thus, modification "would accommodate any lingering discovery uncovered in the deposition." (Defs.' Application at 12).

Due to Defendants' failure to diligently conduct depositions and other discovery matters within the current deadlines by the Court, Defendants should not be given the opportunity to conduct further discovery that may stem from the last-minute deposition of Plaintiff nor should Defendants be given the opportunity to depose Mr. Bingham when they failed to timely notice his deposition. Plaintiff's and Mr. Bingham's depositions could have, and should have, been noticed and taken months ago. Had Defendants been concerned about uncovering identities of any additional percipient witnesses, Defendants could have discovered that information by propounding additional written discovery on Plaintiff. Defendants should not be

rewarded with additional time to conduct unfettered discovery because they waited until the eleventh-hour to make these discovery requests. Accordingly, should the Court find good cause to grant Defendants' request to modify the Scheduling Order, Plaintiff respectfully requests that the Court limit the fact discovery to conducting the deposition and DME of Plaintiff only.

## VII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Ex Parte Application to Modify Scheduling Order in its entirety.

Respectfully submitted,

DATED:  November 21, 2023          LAW OFFICES OF DALE K. GALIPO

By_____*/s/ Hang D. Le*_____
Dale K. Galipo
Hang D. Le
Attorneys for Plaintiff DEZSANEE JONES