# Exhibit 13

DEZSANEE JONES vs CITY OF RIVERSIDE, ET AL.
Taylor LaPoint on 01/06/2023

```
 1                 UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   DEZSANEE JONES,                        )
                                            )
 5             Plaintiff,                   )
                                            )
 6             vs.                          ) Case No.
                                            ) 5:22-CV-1764-SSS-SP
 7   CITY OF RIVERSIDE; TAYLOR LAPOINT;     )
     MIKE SMITH; and DOES 1-10,             )
 8   inclusive,                             )
                                            )
 9             Defendants.                  )
     _____)
10

11

12

13

14          REMOTE VIDEOCONFERENCE DEPOSITION OF

15                      TAYLOR LAPOINT

16                FRIDAY, JANUARY 6, 2023

17

18

19

20

21

22

23   Reported By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:   432537
```

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   DEZSANEE JONES,                          )
                                              )
 5              Plaintiff,                    )
                                              )
 6              vs.                           ) Case No.
                                              ) 5:22-CV-1764-SSS-SP
 7   CITY OF RIVERSIDE; TAYLOR LAPOINT;       )
     MIKE SMITH; and DOES 1-10,               )
 8   inclusive,                               )
                                              )
 9              Defendants.                   )
     _____)
10

11

12

13

14          The remote videoconference deposition of TAYLOR

15   LAPOINT, taken on behalf of the Plaintiff, beginning at 1:13

16   p.m., and ending at 2:57 p.m., on Friday, January 6, 2023,

17   before Jinna Grace Kim, Certified Stenographic Shorthand

18   Reporter No. 14151.

19

20

21

22

23

24

25
```

```
 1   APPEARANCES OF COUNSEL:

 2
     For the Plaintiffs:
 3
              LAW OFFICES OF DALE K. GALIPO
 4            BY:  DALE K. GALIPO, ESQ.
              BY:  HANG D. LE, ESQ.
 5            21800 Burbank Boulevard, Suite 310
              Woodland Hills, California 91367
 6            Tel:  818-347-3333
              Fax:  818-347-4118
 7            E-mail:  dalekgalipo@yahoo.com
              E-mail:  hlee@galipolaw.com
 8

 9   For the Defendants:

10            OFFICE OF THE CITY ATTORNEY-CITY OF RIVERSIDE
              BY:  DEBRA K. COOK, ESQ.
11            3750 University Avenue, Suite 250
              Riverside, California 92501
12            Tel:  951-826-5567
              Fax:  951-826-5540
13            E-mail:

14
     Also Present:  Dezsanee Jones, Judith Gallardo, Avi Melec
15   Vargas, Giana Dibernardo

16

17

18

19

20

21

22

23

24

25
```

```
 1     A.    No.
 2     Q.    And this is probably pretty simplistic, but how did
 3   you know he was in route?
 4         Was it just something communicated over the radio?
 5     A.    It was dispatched two units.  That's kind of how it
 6   goes out.  It goes out to police radio.  Every officer on
 7   duty that day hears it.  But the type of call being a lot
 8   more serious and higher priority usually get a higher officer
 9   response.
10     Q.    Did you have any information that anyone had been
11   specifically injured before you got to the scene?
12     A.    No.
13     Q.    I take it if you would have had that information,
14   you might have called for medical assistance?
15     A.    Just so I'm understanding your question, you know,
16   if -- are we talking like if this whole thing had played a
17   different way and the initial information I received was
18   somebody had been shot or injured?
19     Q.    Correct.
20     A.    Then yes, absolutely.  We probably would have staged
21   medical aid.  That is common.
22     Q.    Did you have information as to whether the caller or
23   the potential victim was a male or female?
24     A.    Female.
25     Q.    That was, again, communicated over the police
```

```
 1     A.    One time before yes, several years ago.
 2     Q.    What was the nature of that call?
 3     A.    I believe it was like domestic related, but I'm not
 4   sure.  It was more than four years ago.
 5     Q.    You don't recall the details of that call; is that
 6   fair?
 7     A.    I don't.
 8     Q.    Did you have other than it being a white male being
 9   the suspect, did you have any other additional information on
10   the suspect?
11     A.    That he was wearing a white T-shirt, black pants
12   with a backpack and was unknown to the caller.
13     Q.    Did you have anything as to age, for example?
14     A.    No.
15     Q.    When you were coming up the stairs, at some point
16   you made certain announcements; correct?  To the people or
17   person inside of 214?
18     A.    Yes.
19     Q.    And you were -- basically you were not getting a
20   response; is that generally a fair statement?
21     A.    That's correct.
22     Q.    And at some point you decided to kick the door in?
23     A.    I did.
24     Q.    Did you decide to do that, or is that recommended to
25   you to do by someone else?
```

 1            That was going through my mind.
 2       Q.   So you didn't feel at that point that she had a gun
 3   on her and it was necessary to search her?
 4       A.   No.  The threat was gone.
 5       Q.   And how about the black female -- sorry -- the black
 6   male on the couch, did you feel any need to search him?
 7       A.   I was -- there was so much going on at the time that
 8   I was trying to process through.  He -- he had told me you
 9   shot my girl.  I assumed that he wasn't the suspect as what
10   was reported initially, and then I didn't -- I didn't say
11   anything to him.
12       Q.   Okay.  Which I guess kind of gets back to one of my
13   questions I asked you before the break.
14            I take it if you would have recognized her as a
15   female and put two and two together, and when the door opened
16   that this is the person calling or the victim, then you would
17   not have shot her.
18            But you're saying you couldn't tell whether she was
19   a male or female or what her race was; is that correct?
20       A.   Yeah.  I didn't know who was behind the door.
21       Q.   Right.  But if you had seen her to be a female,
22   knowing the caller was a female, and the suspect was a male
23   white, then I take it that would have been important
24   information?
25       A.   Yes.  I suppose that would be important information.

 1   the backpack on the first floor?
 2       A.   Yep.
 3       Q.   Okay.  I think that's all the questions I have.
 4            MR. GALIPO:  Debra, do you have any questions for
 5   the officer today?
 6            MS. COOK:  I do.  I just have one.
 7                          EXAMINATION
 8   BY MS. COOK:
 9       Q.   So Mr. Galipo did a good job of unpacking what
10   happened that day, but what I would like you to do is just
11   kind of -- if you can articulate from beginning to end from
12   the moment that you got the call until you shot, each piece
13   of data that you were processing and the impact that it had
14   on your evaluation of the totality of the circumstances in
15   kind of like a realtime overview, please.
16            COURT REPORTER:  And do it slowly, please.
17            Thank you.
18            THE WITNESS:  Yes, ma'am.
19            Upon initial, you know, getting that dispatch call,
20   it came out as a high priority call; a subject with a gun;
21   female caller; white male suspect wearing a white T-shirt,
22   black pants with a black backpack armed with a handgun; had
23   walked into her apartment.
24            This -- this is significant to me because one,
25   we have an obvious male/female gender.  Males are typically

```
 1                      CERTIFICATE

 2                           OF

 3         CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5        I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6   Stenographic Shorthand Reporter of the State of California,

 7   do hereby certify:

 8        That the foregoing proceedings were taken before me

 9   at the time and place herein set forth;

10        That any witnesses in the foregoing proceedings,

11   prior to testifying, were placed under oath;

12        That a verbatim record of the proceedings was made

13   by me, using machine shorthand, which was thereafter

14   transcribed under my direction;

15        Further, that the foregoing is an accurate

16   transcription thereof.

17        I further certify that I am neither financially

18   interested in the action, nor a relative or employee of any

19   attorney of any of the parties.

20

21        IN WITNESS WHEREOF, I have subscribed my name, this

22   date:  January 6, 2023.

23

24        _____
          Jinna Grace Kim, CSR No. 14151
25
```