PHAEDRA A. NORTON, City Attorney, SBN 200271
REBECCA L. MCKEE, Assistant City Attorney, SBN 279485
DEBRA K. COOK, Deputy City Attorney, SBN 250114
JUDITH N. GALLARDO, Deputy City Attorney, SBN 297688
CECILIA ROJAS, Deputy City Attorney, SBN 340468
**OFFICE OF THE CITY ATTORNEY – City of Riverside**
3750 University Avenue, Suite 250
Riverside, California 92501                    *Fee Exempt Per*
Telephone (951) 826-5567                       *Govt. Code § 6103*

Attorneys for Defendants,
CITY OF RIVERSIDE, a California charter city and municipal corporation;
TAYLOR LAPOINT, an individual; and MIKE SMITH, an individual

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEZSANEE JONES, individually,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF RIVERSIDE, TAYLOR LAPOINT, MIKE SMITH; and DOES 3 through 100 inclusive,<br><br>                    Defendants. | CASE NO.  5:22-cv-1764-SSS-SP<br>*[Assigned to Hon. Sunshine S. Sykes, Courtroom: 2]*<br><br>**DEFENDANTS' RULE 56 SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[ F.R.C.P. 56]**<br><br>**Date:          January 26, 2024**<br>**Time:          2:00 p.m.**<br>**Courtroom:   2**<br><br>Complaint Filed:  10/07/2022<br>**FAC Filed:      12/8/2022**<br><br>Trial Date:      June 24, 2024 |

**TO THE COURT, PLAINTIFF AND HIS ATTORNEYS:**

        Defendants submit the following separate statement of undisputed material

facts in support of their FED. R. CIV. P. 56 motion for partial summary judgment.

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **1. Plaintiff Dezsanee Jones ("Plaintiff") called 911 twice on September 20, 2021 with the first 911 call at approximately 2:17 p.m. on September 20, 2021 ("First 911 Call").** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Dezsanee Jones December 1, 2023 Deposition ("Plaintiff Depo.")* at pg:ln 10:18-22 attached to the *Declaration of Debra K. Cook ("Cook Decl.")* ¶1;<br>• **EXH. 4,** *Plaintiff's Responses to City's Request for Admissions, Set One ("RFA1")* No. 1 at pg:ln 3:5-8 attached to *Cook Decl.* ¶4.<br>• **EXH 5,** *Plaintiff's Responses to City's Interrogatories Set 1 ("ROGS1")* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **2. Plaintiff was at her residence located at 807 Blaine Street., Apt. 214, Riverside when she made the First 911 Call.** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff Depo.* at pg:ln 10:18-22, 43:15-19 attached to the *Cook Decl.* ¶1;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **3. In the First 911 Call she told the 911 operator ("Operator") that there was "a boy in here with a gun in my house."** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 11:1-4 attached to *Cook Decl.* ¶1;<br>• **EXH. 4,** *RFA1* No. 2 at pg:ln 3:9-13 attached to Cook Decl. ¶4;<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **4. In the First 911 Call, in response to Plaintiff's report that there was "a boy in here with a gun in my house," the Operator asked Plaintiff "do you know this individual."** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 11:5-8 attached to *Cook Decl.* ¶1;<br>• **EXH. 4,** *RFA1* No. 3 at 3:14-18 attached to Cook Decl. ¶4;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **5. In the First 911 Call, in response to the Operator's question asking Plaintiff if she knew the individual, Plaintiff said "no."** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 11:9-11, 12:7-9 44:3-8 attached to *Cook Decl.* ¶1;<br>• **EXH. 4,** *RFA1* No. 4 at pg:ln 3:19-23 attached to Cook Decl. ¶4;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **6. Plaintiff lied when she told the Operator that she did not know the individual with a gun in her house.** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 44:3-8 attached to *Cook Decl.* ¶1.<br>• **EXH. 4,** *RFA1* No. 22 at pg:ln 7:23-27 attached to Cook Decl. ¶4; |
| **7. The boy in her house with a gun was Plaintiff's boyfriend, Resan Bingham.** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 21:13-25 attached to *Cook Decl.* ¶1. |
| **8. The Operator asked Plaintiff for "a description of him [Resan Bingham], White, black, Hispanic, Asian?"** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 11:14-24 attached to *Cook Decl.* ¶1;<br>• **EXH. 4,** *RFA1* No. 6 at pg:ln 4:4-11 attached to Cook Decl. ¶4;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **9. Plaintiff replied, "Uh, black. White shirt, black pants. Black socks, black shoes."** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 11:14-24 attached to *Cook Decl.* ¶1;<br>• **EXH. 4,** *RFA1* No. 6 at pg:ln 4:4-11 attached to Cook Decl. ¶4;<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **10.     The Operator followed up with the clarification question, "You said white male?"** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 11:25-12:6; 54:2-18 attached to *Cook Decl.* ¶1;<br>• **EXH. 4,** *RFA1* No. 6 at pg:ln 4:4-11 attached to Cook Decl. ¶4;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **11.     Plaintiff clarified, "White."** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 11:25-12:6; 54:2-18 attached to *Cook Decl.* ¶1;<br>• **EXH. 4,** *RFA1* No. 6 at pg:ln 4:4-11 attached to Cook Decl. ¶4;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **12.     Plaintiff lied when she told the Operator that the individual [Resan Bingham] was a white male.** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 54:2-25 attached to *Cook Decl.* ¶1; |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 13.    The Operator asked Plaintiff "How old does he [Resan Bingham] look?" | **EVIDENCE**:<br>• **EXH 1**, *Plaintiff's Depo* at pg:ln 55:10-21 attached to *Cook Decl.* ¶1;<br>• **EXH. 4**, *RFA1* No. 7 at pg:ln 4:12-16 attached to Cook Decl. ¶4;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl*. ¶6. |
| 14.    Plaintiff replied that he [Resan Bingham] looked "about 29." | **EVIDENCE**:<br>• **EXH 1**, *Plaintiff's Depo* at pg:ln 55:10-21 attached to *Cook Decl.* ¶1;<br>• **EXH. 4**, *RFA1* No. 7 at pg:ln 4:12-16 attached to Cook Decl. ¶4;<br>• **EXH 5**, *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl*. ¶6. |
| 15.    Plaintiff further described the man in her house [Resan Bingham] as wearing a white shirt and black shorts. | **EVIDENCE**:<br>• **EXH 1**, *Plaintiff's Depo* at pg:ln 56:21-58:19 attached to *Cook Decl.* ¶1;<br>• **EXH. 4**, *RFA1* No. 8 and 9 at pg:ln 4:17-26 attached to Cook Decl. ¶4<br>• **EXH 5**, *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl*. ¶6. |
| 16.    The Operator asked Plaintiff "What kind of gun was it?" | **EVIDENCE**:<br>• **EXH 1**, *Plaintiff's Depo* at pg:ln 59:4-11 attached to *Cook Decl.* ¶1;<br>• **EXH. 4**, *RFA1* No. 10 at pg:ln 5:1-7 attached to Cook Decl. ¶4;<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl*. ¶6. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **17.    Plaintiff responded "I'm not sure. I think it was like a handgun."** | **EVIDENCE**: <br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 59:4-11 attached to *Cook Decl.* ¶1; <br>• **EXH. 4,** *RFA1* No. 10 at pg:ln 5:1-7 attached to Cook Decl. ¶4; <br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5; <br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **18.    Plaintiff then told the Operator "I know he [Resan Bingham] has a black backpack."** | **EVIDENCE**: <br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 12:25-13:3; 62:6-11 attached to *Cook Decl.* ¶1; <br>• **EXH. 4,** *RFA1* No. 11 at pg:ln 5:8-12 attached to Cook Decl. ¶4; <br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5; <br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **19.    Plaintiff intentionally disconnected the call at the demand of Resan Bingham.** | **EVIDENCE**: <br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 13:9-17 attached to *Cook Decl.* ¶1; <br>• **EXH. 4,** *RFA1* No. 15 and 16 at pg:ln 6:1-9 attached to Cook Decl. ¶4; <br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5; <br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |
| **20.    Shortly after Plaintiff disconnected the call, the Operator attempted to call Plaintiff back, but Plaintiff did not pick up under threat by Resan Bingham.** | **EVIDENCE**: <br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 13:8-14:1 attached to *Cook Decl.* ¶1. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **21.     RPD dispatched the call and marked it a high priority call.** | **EVIDENCE**:<br>• **EXH 2,** January 6, 2023 *Deposition of Taylor Lapoint ("Lapoint Depo.")* at pg:ln 65:9-66:6 attached to *Cook Decl.* ¶2; |
| **22.     Defendant Taylor Lapoint ("Officer Lapoint") and Mike Smith ("Officer Smith") responded to the dispatch and arrived at Plaintiff's apartment complex within three minutes.** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 88:25-89:19 attached to *Cook Decl.* ¶1.<br>• **EXH 2,** *Lapoint Depo.* at pg:ln 65:9-66:6 attached to *Cook Decl.* ¶2.<br>• **EXH 3,** January 6, 2023 *Deposition of Mike Smith ("Smith Depo.")* at pg:ln 20:6-21:2 attached to *Cook Decl.* ¶3;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Declaration of Taylor Lapoint ("Lapoint Decl.")* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Declaration of Mike Smith ("Smith Decl.")* ¶4; |
| **23.     The dispatch conveyed to the officers the following: "a subject with a gun, female caller, white male suspect wearing a white t-shirt, black pants, with a black backpack armed with a handgun had walked into her apartment."** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 88:25-89:19 attached to *Cook Decl.* ¶1;<br>• **EXH 2,** *Lapoint Depo.* at pg:ln 65:9-66:6 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 19:13-20:1 attached to *Cook Decl.* ¶3.<br>• **EXH. 6,** First 911 call audio attached to *Cook Decl.* ¶6. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **24.** **When Officer Lapoint received the dispatch, he assessed the risk level as very high because his previous experiences when males have been inside female's apartments, the outcome could be dire.** | **EVIDENCE**: <br> • **EXH 2,** *Officer LaPoint's Depo* at pg:ln 65:9-66:6 attached to *Cook Decl.* ¶2. |
| **25.** **Officer Lapoint previously encountered a female murdered by a male intruder and wanted to make sure Plaintiff was safe. Officer Lapoint assessed this fact as an elevated risk factor for danger.** | **EVIDENCE**: <br> • **EXH 2,** *Officer LaPoint's Depo* at pg:ln 66:7-12 attached to *Cook Decl.* ¶2. |
| **26.** **Officers Lapoint and Smith received an update that Plaintiff's call disconnected and RPD Dispatch was attempting to call back. Officer Lapoint also assessed this fact as an elevated risk factor for danger.** | **EVIDENCE**: <br> • **EXH 2,** *Lapoint Depo.* at pg:ln 66:7-12 attached to *Cook Decl.* ¶2; <br> • **EXH 3,** *Smith Depo.* at pg:ln 27:1-12 attached to *Cook Decl.* ¶3. |
| **27.** **Officers Lapoint and Smith began their investigation to locate Plaintiff and her apartment residence.** | **EVIDENCE**: <br> • **EXH 2,** *Lapoint Depo.* at pg:ln 66:23-67:11 attached to *Cook Decl.* ¶2; <br> • **EXH 3,** *Smith Depo.* at pg:ln 27:1-12 attached to *Cook Decl.* ¶3; <br> • **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4; <br> • **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **28.   As Officers Lapoint and Smith swiftly made their way toward Plaintiff's apartment, they found a black backpack inside of a bush on the first floor outside Plaintiff's second floor apartment.** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 92:9-13 attached to *Cook Decl.* ¶1;<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 15:19-16:19 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 35:12-18 attached to *Cook Decl.* ¶3;<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4; |
| **29.   Inside the black backpack was a gun. Officer Lapoint also assessed this fact as an elevated risk factor for danger.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 15:19-16:19 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 25:4-26:12 attached to *Cook Decl.* ¶3;<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4; |
| **30.   After discovering the gun, Officer Lapoint assessed the risk level as further elevated because Plaintiff could have been already shot, potentially bleeding out, and the suspect ran off and dumped the gun.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 67:5-11 attached to *Cook Decl.* ¶2. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **31.   Officer Lapoint told Officer Smith to grab the backpack and urgently find Plaintiff to assure she was safe.** | **EVIDENCE**: <br> • **EXH 2,** *Officer LaPoint's Depo* at pg:ln 67:12-13 attached to *Cook Decl.* ¶2; <br> • **EXH 3,** *Smith Depo.* at pg:ln 25:4-26:12 attached to *Cook Decl.* ¶3; <br> • **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4; <br> • **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4; |
| **32.   As Officers Lapoint and Smith were urgently looking for Plaintiff's apartment, Officer Lapoint cleared the way from bystanders as he approached the unit.** | **EVIDENCE**: <br> • **EXH 2,** *Officer LaPoint's Depo* at pg:ln 67:12-19 attached to *Cook Decl.* ¶2; <br> • **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4; <br> • **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4. |
| **33.   Plaintiff's apartment [214] residence is on the second floor of her building and at the end of a hallway.** | **EVIDENCE**: <br> • **EXH 2,** *Officer LaPoint's Depo* at pg:ln 67:20-22 attached to *Cook Decl.* ¶2; <br> • **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4; <br> • **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4; |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 34.    Officer Lapoint was in front of Officer Smith and made his way to Plaintiff's apartment quietly. | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 67:20-24 attached to *Cook Decl.* ¶2;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4; |
| 35.    Attempting to gather as much intelligence as possible, Officer Lapoint could not hear any screaming, yelling, or talking. | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 67:21-68:4 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 29:12-30:11 attached to *Cook Decl.* ¶3;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4; |
| 36.    This fact raised concerns for Officer Lapoint because he did not know if the caller was dead or injured inside the apartment. Officer Lapoint assessed this fact as an elevated risk factor for danger. | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 67:21-68:4 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 33:8-34:21 attached to *Cook Decl.* ¶3. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **37.     After not hearing anything, Officer Lapoint knocked on Plaintiff's apartment door, and announced his presence as the police for the first time commanded that the door be opened.** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 21:9-18 attached to *Cook Decl.* ¶1;<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 26:15-21; 45:21-23; 68:11-15 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 33:8-34:21 attached to *Cook Decl.* ¶3.<br>• **EXH. 4,** *RFA1* No. 23 and 24 at pg:ln 8:1-12 attached to Cook Decl. ¶4;<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4;<br>• **EXH 9,** Critical Incident Video attached to *Declaration of Ryan Railsback ("Railsback Decl.")* ¶3. |
| **38.     Officer Smith stood approximately four (4) to five (5) feet behind Officer Lapoint as backup and cover.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 28:21-29:9 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 23:6-17; 30:17-31:8 attached to *Cook Decl.* ¶3.<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4;<br>• **EXH 9,** Critical Incident Video attached to *Railsback Decl.* ¶3. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **39.    Officer Lapoint placed himself in a point of concealment to the left of Plaintiff's apartment keeping the doorway clear.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 26:15-28:4; 68:11-15 attached to *Cook Decl.* ¶2;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4;<br>• **EXH 9,** Critical Incident Video attached to *Railsback Decl.* ¶3. |
| **40.    From the point of concealment, Officer Lapoint heard what he believed to be a struggle coming from inside the apartment.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 26:15-28:4; 68:11-15 attached to *Cook Decl.* ¶2.<br>• **EXH 3,** *Smith Depo.* at pg:ln 29:12-30:11 attached to *Cook Decl.* ¶3. |
| **41.    From Officer Lapoint's perspective, the struggle sounded violent like someone was being held against their will, potentially making a last dash to the door and rolling around on the ground. Officer Lapoint assessed this fact as an elevated risk factor for danger.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 26:15-28:4; 68:11-15 attached to *Cook Decl.* ¶2. |
| **42.    Plaintiff did not answer the door in response to Officer Lapoint's commands because she was being restricted and held down by Resan Bingham's bodyweight.** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 23:23-24:11 attached to *Cook Decl.* ¶1.<br>• **EXH. 4,** *RFA1* No. 28 at pg:ln 9:22-26 attached to Cook Decl. ¶4;<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5; |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **43.** **Hearing what he thought was a violent struggle, Officer Lapoint believed there was still a legitimate threat inside the apartment and that the life of the female caller inside the apartment was in jeopardy.** | **EVIDENCE**: <br> • **EXH 2,** *Officer LaPoint's Depo* at pg:ln 26:15-28:4; 68:21-23 attached to *Cook Decl.* ¶2. |
| **44.** **Instead of responding to Officer Lapoint's commands, Plaintiff made a second 9-1-1 call (Second 911 Call) to cancel the emergency police response.** | **EVIDENCE**: <br> • **EXH 1,** *Plaintiff's Depo* at pg:ln 109:5-110:8 attached to *Cook Decl.* ¶1; <br> • **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5; <br> • **EXH. 10,** Second 911 call audio attached to *Cook Decl.* ¶10. |
| **45. In the Second 911 Call, Plaintiff told the Operator "I made a report, and the person [Resan Bingham] isn't here anymore."** | **EVIDENCE**: <br> • **EXH 1,** *Plaintiff's Depo* at pg:ln 72:13-76:25 attached to *Cook Decl.* ¶1; <br> • **EXH. 10,** Second 911 call audio attached to *Cook Decl.* ¶10. |
| **46. Plaintiff lied to the Operator when she told her that Resan Bingham was no longer in her home.** | **EVIDENCE**: <br> • **EXH 1,** *Plaintiff's Depo* at pg:ln 72:13-76:25 attached to *Cook Decl.* ¶1; <br> • **EXH. 4,** *RFA1* No. 12 at pg:ln 5:13-17 attached to Cook Decl. ¶4. |
| **47. Even though Plaintiff told the Operator that Resan Bingham was no longer in her home, Plaintiff still wanted the Police to arrive and help her.** | **EVIDENCE**: <br> • **EXH 1,** *Plaintiff's Depo* at pg:ln 72:13-76:25 attached to *Cook Decl.* ¶1. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 48. The Second 911 Call audio depicts both Plaintiff and Resan Bingham scuffling. | **EVIDENCE:**<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 72:13-76:25 attached to *Cook Decl.* ¶1;<br>• **EXH. 10,** Second 911 call audio attached to *Cook Decl.* ¶10. |
| 49. Plaintiff admitted that the scuffle depicted in the Second 911 Call audio was Resan Bingham threatening Plaintiff. | **EVIDENCE:**<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 72:13-76:25 attached to *Cook Decl.* ¶1;<br>• **EXH. 10,** Second 911 call audio attached to *Cook Decl.* ¶10. |
| 50.     Based on the totality of the circumstances and increasing levels of risk for danger, Officer Lapoint announced he wanted to kick in the door. | **EVIDENCE:**<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 26:15-27:13 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 33:8-34:21 attached to *Cook Decl.* ¶3;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4;<br>• **EXH 9,** Critical Incident Video attached to *Railsback Decl.* ¶3. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **51.    Officer Lapoint gave a second verbal warning that he was going to kick down the door.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 63:21-64:13 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 33:8-34:21 attached to *Cook Decl.* ¶3;<br>• **EXH. 4,** *RFA1* No. 25 at pg:ln 8:13-23 attached to Cook Decl. ¶4;<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4;<br>• **EXH 9,** Critical Incident Video attached to *Railsback Decl.* ¶3. |
| **52.    Officer Lapoint did not hear anyone call out, scream, or yell. At no point did anyone inside the apartment respond to Officer LaPoint's commands to open the door. Officer Lapoint could only hear the violent struggle.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 63:21-64:21; 68:23-69:3 attached to *Cook Decl.* ¶2.<br>• **EXH 3,** *Smith Depo.* at pg:ln 33:8-34:21 attached to *Cook Decl.* ¶3; |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **53.    Officer Lapoint gave a third warning by banging on the door, announcing police, and warning that he would kick the door open.** | **EVIDENCE**: <br> • **EXH 2,** *Officer LaPoint's Depo* at pg:ln 26:15-27:13 attached to *Cook Decl.* ¶2; <br> • **EXH 3,** *Smith Depo.* at pg:ln 33:8-34:21 attached to *Cook Decl.* ¶3; <br> • **EXH. 4,** *RFA1* No. 26 at pg:ln 8:24-9:8 attached to Cook Decl. ¶4; <br> • **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5; <br> • **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4; <br> • **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4; <br> • **EXH 9,** Critical Incident Video attached to *Railsback Decl.* ¶3. |
| **54.    Officer Lapoint planned that once he breached the door he would position himself back to his point of concealment and reassess his surroundings.** | **EVIDENCE**: <br> • **EXH 2,** *Officer LaPoint's Depo* at pg:ln 36:17-37:8  attached to *Cook Decl.* ¶2. |
| **55.    Officer Lapoint was concerned that he would confront an armed or violent subject on the other side of the door.** | **EVIDENCE**: <br> • **EXH 2,** *Officer LaPoint's Depo* at pg:ln 36:17-37:8; 47:5-21  attached to *Cook Decl.* ¶2. |
| **56.    Sometime after third knock and the announcement, "Ma'am please come to the door, I'm gonna kick it down," Mr. Bingham released Plaintiff and allowed Plaintiff to get up from the couch and make her way to the front door.** | **EVIDENCE**: <br> • **EXH 1,** *Plaintiff's Depo* at pg:ln 37:12-19 attached to *Cook Decl.* ¶1; <br> • **EXH 5,** *ROGS1* No. 2 at pg:ln 4:6-5:16 attached to *Cook Decl.* ¶5; |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **57.     During Plaintiff's Second 911 Call, after a minute of warnings, Officer Lapoint kicked open the door and the door propped open about a quarter of the way.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 51:23-52-6  attached to *Cook Decl.* ¶2;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4;<br>• **EXH 9,** Critical Incident Video attached to *Railsback Decl.* ¶3. |
| **58. As Plaintiff was walking to the door, the Operator on the Second 911 Call asked Plaintiff, "Where did the person go."** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 72:13-76:25 attached to *Cook Decl.* ¶1;<br>• **EXH. 10,** Second 911 call audio attached to *Cook Decl.* ¶10. |
| **59.     Immediately after the Operator asked Plaintiff, "Where did the person go," Plaintiff said, "He shot me."** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 72:13-76:25 attached to *Cook Decl.* ¶1;<br>• **EXH. 10,** Second 911 call audio attached to *Cook Decl.* ¶10. |
| **60.     In that quarter opening of the door, immediately after Officer Lapoint kicked the door open, it appeared to him that an unknown person was unexpectedly standing approximately two (2) to three (3) feet in front of him inside of the doorway with their arms outstretched in a shooting stance and he was unexpectedly startled.** | **EVIDENCE**:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 32:15-33:1; 35:25-36:3; 36:17-37:8;  attached to *Cook Decl.* ¶2;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4;<br>• **EXH 9,** Critical Incident Video attached to *Railsback Decl.* ¶3. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **61.    There was some light in the hallway directly over Officer Lapoint standing outside the apartment. It was dark inside the apartment.** | EVIDENCE:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 32:15-33:1; 35:15-17 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 30:17-31:8 attached to *Cook Decl.* ¶3;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4;<br>• **EXH 9,** Critical Incident Video attached to *Railsback Decl.* ¶3. |
| **62.    Officer Lapoint could not see the full body of the unknown person on the other side of the door and could not determine the unknown person's race or gender.** | EVIDENCE:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 52:7-18;  attached to *Cook Decl.* ¶2. |
| **63.    Officer Lapoint observed what appeared to be an unknown person with their two (2) forearms outstretched towards him. Officer Lapoint was startled and he fired his duty weapon within a second of kicking in the door.** | EVIDENCE:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 69:15-22;  attached to *Cook Decl.* ¶2;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4; |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 64.   Officers then immediately offered medical assistance to Plaintiff. | EVIDENCE:<br>• **EXH 2,** *Officer LaPoint's Depo* at pg:ln 57:20-24 attached to *Cook Decl.* ¶2;<br>• **EXH 3,** *Smith Depo.* at pg:ln 51:10-52:11 attached to *Cook Decl.* ¶3;<br>• **EXH 7,** Officer Lapoint's body worn camera video footage attached to *Lapoint Decl.* ¶4;<br>• **EXH. 8,** Officer Smith's body worn camera video footage attached to *Smith Decl.* ¶4;<br>• **EXH 9,** Critical Incident Video attached to *Railsback Decl.* ¶3. |
| 65.   At no time did Officer Lapoint threaten Plaintiff in any way. | EVIDENCE:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 124:8-125:3 attached to *Cook Decl.* ¶1.<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 8:23-10:6 attached to *Cook Decl.* ¶5. |
| 66.   At no time did Officer Lapoint intimidate Plaintiff in any way. | EVIDENCE:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 124:8-125:3 attached to *Cook Decl.* ¶1.<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 8:23-10:6 attached to *Cook Decl.* ¶5. |
| 67.   At no time did Officer Lapoint coerce Plaintiff in any way. | EVIDENCE:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 124:8-125:3 attached to *Cook Decl.* ¶1.<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 8:23-10:6 attached to *Cook Decl.* ¶5. |

| City's Undisputed Material Facts | Supporting Evidence |
|---|---|
| **68.   At no time did Officer Lapoint treat Plaintiff inappropriately because of her racial status.** | **EVIDENCE**:<br>• **EXH 1,** *Plaintiff's Depo* at pg:ln 124:8-125:3 attached to *Cook Decl.* ¶1.<br>• **EXH 5,** *ROGS1* No. 2 at pg:ln 8:23-10:6 attached to *Cook Decl.* ¶5. |

DATED:  December 8, 2023                    **OFFICE OF THE CITY ATTORNEY**

By:  ___/s/ *Debra K. Cook*_____
DEBRA K. COOK
Attorneys for Defendant and Cross-Complainant CITY OF RIVERSIDE and TAYLOR LAPOINT

## SIGNATURE ATTESTATION

Pursuant to Civil L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in this document's content and have authorized the filing of this document with the use of their electronic signature.

DATED:  December 8, 2023        **OFFICE OF THE CITY ATTORNEY**

By: ___*/s/ Debra K. Cook*_____
DEBRA K. COOK
Attorneys for Defendant and Cross-Complainant CITY OF RIVERSIDE and TAYLOR LAPOINT