# Exhibit B

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   DEZSANEE JONES,                      )
                                          )
 5              Plaintiff,                )
                                          )
 6        vs.                             ) Case No.
                                          ) 5:22-CV-1764-SSS-SP
 7   CITY OF RIVERSIDE; TAYLOR LAPOINT;   )
     MIKE SMITH; and DOES 1-10,           )
 8   inclusive,                           )
                                          )
 9              Defendants.               )
                                          )
10

11

12

13

14          REMOTE VIDEOCONFERENCE DEPOSITION OF

15                      MICHAEL SMITH

16                  FRIDAY, JANUARY 6, 2023

17

18

19

20

21

22

23   Reported By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.: 432537
```

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4    DEZSANEE JONES,                      )
                                           )
 5                    Plaintiff,           )
                                           )
 6              vs.                        ) Case No.
                                           ) 5:22-CV-1764-SSS-SP
 7    CITY OF RIVERSIDE; TAYLOR LAPOINT;   )
      MIKE SMITH; and DOES 1-10,           )
 8    inclusive,                           )
                                           )
 9                    Defendants.          )
                                           )
10

11

12

13

14          The remote videoconference deposition of MICHAEL

15    SMITH, taken on behalf of the Plaintiff, beginning at 10:05

16    a.m., and ending at 11:47 a.m., on Friday, January 6, 2023,

17    before Jinna Grace Kim, Certified Stenographic Shorthand

18    Reporter No. 14151.

19

20

21

22

23

24

25
```

```
 1   APPEARANCES OF COUNSEL:

 2
     For the Plaintiffs:
 3
             LAW OFFICES OF DALE K. GALIPO
 4           BY:  DALE K. GALIPO, ESQ.
             BY:  HANG D. LE, ESQ.
 5           21800 Burbank Boulevard, Suite 310
             Woodland Hills, California 91367
 6           Tel:  818-347-3333
             Fax:  818-347-4118
 7           E-mail:  dalekgalipo@yahoo.com
             E-mail:  hlee@galipolaw.com
 8

 9   For the Defendants:

10           OFFICE OF THE CITY ATTORNEY-CITY OF RIVERSIDE
             BY:  DEBRA K. COOK, ESQ.
11           3750 University Avenue, Suite 250
             Riverside, California 92501
12           Tel:  951-826-5567
             Fax:  951-826-5540
13           E-mail:

14
     Also Present:  Dezsanee Jones, Judith Gallardo, Avi Melec
15   Vargas, Giana Divernardo

16

17

18

19

20

21

22

23

24

25
```

```
 1      A.   Office LaPoint pulled in just before I did to the
 2   call.  So I pulled in and parked behind him.
 3      Q.   Had you worked with Officer LaPoint before?
 4      A.   Yes.
 5      Q.   Do you have an estimate as to how long you had known
 6   Officer LaPoint before the time of this incident in 2021?
 7      A.   Since I graduated the academy we worked on and off
 8   together on different shifts, and I would say for about a
 9   year straight we were assigned to graveyard working the same
10   days and nights.
11      Q.   So you were familiar with Officer LaPoint; is that
12   fair?
13      A.   Yes, sir.
14      Q.   And after you got out of your police vehicles, was
15   there any discussion you had with Officer LaPoint about a
16   tactical plan?
17      A.   When we got out of the -- when we got out of our
18   cars, our main priority was to locate the apartment because
19   it was -- we didn't know where the apartment was located.
20           So our decision was to locate apartment that way we
21   can make sure that the female who had called us was safe.
22      Q.   And you had the apartment number; correct?
23      A.   Yes, sir.  214.
24      Q.   But because you were not there, you had not been
25   there before, you were not exactly sure where 214?
```

```
1     A.   Yes, sir.
2     Q.   That would be both yours and Officer LaPoint's?
3     A.   Yes, sir.
4     Q.   I understand obviously there was a concern for the
5  safety of the female caller and finding the apartment.
6          I guess what I'm wondering is, if there was any
7  discussion between you and Officer LaPoint regarding, you
8  know, contact-cover configuration, you know, who would knock
9  on the door, who would give the commands, anything like
10 that?
11    A.   We never specifically spoke and said, hey, you'll be
12 contact, you'll be cover.  He had went upstairs to the door
13 first at which point he took a contact position, and then it
14 was my responsibility to take a cover position as we're
15 normally trained throughout field training in the academy
16 your rolls will continue to evolve depending on the
17 situation.
18    Q.   Okay.  And what did you understand the cover
19 position to be in this context?
20    A.   If you -- do you want to go back to the beginning of
21 the incident, or to the door --
22    Q.   No.  I'm trying to -- I'm trying to move forward to
23 the time where you located the Room 214, Apartment 214.
24         It appears that you at some point were able to
25 locate the apartment number?
```

```
 1  something I'll come back to it.  So I think by the end we'll
 2  cover everything, but I think it's better we did it that way
 3  just so we can go chronological.
 4      A.   Yes, sir.
 5      Q.   So okay.  So now you're approaching Apartment 214.
 6           When you listen to your body-worn camera recently,
 7  I'm assuming it has audio on it, also --
 8      A.   Yes, it does, sir.
 9      Q.   Obviously, you would be able to hear whatever is
10  being said between you and Officer LaPoint?
11      A.   That's correct.
12      Q.   Did you hear any screaming coming from Apartment 214
13  when you were approaching it?
14      A.   When we were approaching I did to the hear any
15  screaming.
16      Q.   Did you hear any sounds of a struggle or a fight
17  when you were approaching 214?
18      A.   From my position where I was at Apartment 214 I
19  could hear what I would call shuffling inside of the
20  apartment which can vary as to what you constitute sounds of
21  a struggle versus what other people do.  So the best I can
22  describe it was there was shuffling inside the apartment.
23           So that was the noise that I heard inside the
24  apartment.
25      Q.   So shuffling like someone could be walking and
```

1  moving in the apartment?
2      A.   That's correct.  It gave me the -- from what I could
3  tell from the shuffling, it was something moving around
4  inside the apartment.  What it was, how it was being moved, I
5  couldn't give you an exact answer.
6      Q.   Did you communicate that at that time to Officer
7  LaPoint that you heard shuffling?
8      A.   Yes.  I told him I heard noise from inside the
9  apartment.
10     Q.   And you were referring to the shuffling?
11     A.   Yes, sir.
12     Q.   And then at some point did Officer LaPoint approach
13  the door?
14     A.   So when I got up to the stairs because I had to
15  gather the backpack, Officer LaPoint was already at the door
16  at that point.
17     Q.   Okay.  And where were you positioned when you saw
18  Officer LaPaoint at the door?
19     A.   Absolutely.  So I'll describe the hallway for you,
20  the approach to the apartment just to make sure that -- that
21  there is a better understanding of it.
22          Come up to the stairs; there is -- you turn to the
23  right, and it's a hallway that I would say is probably ten to
24  fifteen feet, maybe about four foot wide that leads straight
25  down to the apartment door which is 214 at the end of the

1  hallway.  Right above the door there is a light that is
2  shining down.  So when someone's standing in the doorway, you
3  can see who is standing there.  And then to the left there is
4  a little alcove that you can step off into that wouldn't be
5  standing in front of the door.  So when I get to the top of
6  the stairs, right at the end of that hallway there is a
7  90-degree corner that leads down to another walkway going
8  away.
9          So did I explain that good enough?
10    Q.   Yeah.  That's good.
11    A.   Okay.  Right at that 90 is where I took position
12  because Officer LaPoint was up in front of me at that little
13  cutout of the alcove.  So there was no way that we both could
14  have safely fit right in front of that -- right in front of
15  the door.  It would have put him in a bad spot and me in a
16  bad spot.
17          So I took a position of concealment because it
18  wasn't hard cover behind that 90-degree corner.  So that way
19  I had a visual of the door, and then Officer LaPoint had room
20  to the step off to the side of the door after knocking on the
21  door.
22    Q.   Thank you for that.
23          COURT REPORTER:  I want to ask you to slow down
24  because you're talking really fast.
25          THE WITNESS:  Okay.  Sorry.

```
 1                    CERTIFICATE

 2                        OF

 3        CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5        I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6   Stenographic Shorthand Reporter of the State of California,

 7   do hereby certify:

 8            That the foregoing proceedings were taken before me

 9   at the time and place herein set forth;

10            That any witnesses in the foregoing proceedings,

11   prior to testifying, were placed under oath;

12            That a verbatim record of the proceedings was made

13   by me, using machine shorthand, which was thereafter

14   transcribed under my direction;

15            Further, that the foregoing is an accurate

16   transcription thereof.

17            I further certify that I am neither financially

18   interested in the action, nor a relative or employee of any

19   attorney of any of the parties.

20

21            IN WITNESS WHEREOF, I have subscribed my name, this

22   date:  January 6, 2023.

23

24                          _____
                            Jinna Grace Kim, CSR No. 14151
25
```