**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiff
DEZSANEE JONES

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEZSANEE JONES, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF RIVERSIDE; TAYLOR LAPOINT; MIKE SMITH; and DOES 3-10, inclusive, <br><br> Defendants. | Case No. 5:22-cv-01764-SSS-SP <br><br> *Honorable Sunshine S. Sykes* <br> *Hon. Mag. Judge Sheri Pym* <br><br> **DECLARATION OF SCOTT DEFOE** |

# DECLARATION OF SCOTT DEFOE

I, Scott DeFoe, declare as follows:

1. I am a police practices expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances.

2. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

3. My opinions are based in part on my training, professional experience and education. I am a twenty-year veteran of the Los Angeles Police Department ("LAPD"). I held supervisory positions for the last 14 years of my career. During my tenure with the LAPD, I received over 100 commendations, including the Medal of Valor, Purple Heart, and Police Star.

4. Before reaching my opinions in this case, I reviewed the involved officers' deposition transcripts, recorded interviews, videos from body-worn cameras, photographs of the scene, the available police reports, as well as POST Learning Domains.

5. The black backpack that contained a Taurus .357 revolver and other items described by Ms. Dezsanee Jones was <u>located</u> by Riverside Police Department Police Officers Taylor Lapoint and Michael Smith in the bushes underneath the window of Apartment <u>No. 214</u>, prior to ascending the stairs and <u>prior</u> to Police Officer Taylor Lapoint breaching the front door of Apartment <u>No. 214</u>. It is my opinion that the discovery of the black backpack and firearm relating to the call would have informed a reasonable officer acting consistent with standard police officer training and practices that the threat of harm to the Reporting Party had somewhat lessened as the weapon involved in the call was now contained.

//
//

6. In my opinion, Riverside Police Department Police Officer Taylor Lapoint made poor tactical decisions, limited his tactical options, and unnecessarily escalated the situation when he left a position of cover and moved by himself and positioned himself at the front door at 807 Blaine Street, Apartment No. 214, Riverside, California 92507, that did not afford him any cover or concealment.

7. A reasonable Police Officer acting consistent with standard police training and practices would have formulated a safe tactical plan with the other officers on scene prior from a position of cover before attempting to make contact or breach the apartment door. In my opinion, Riverside Police Department Police Officers Taylor Lapoint, Michael Smith and Conor Sklarsky violated standard police training and practices when they <u>failed</u> to formulate a safe tactical plan from a position of cover prior to Police Officer Taylor Lapoint positioning himself at the front door at 807 Blaine Street, Apartment No. 214, Riverside, California 92507. Police Officers must approach every contact with officer safety in mind. Complacency, overconfidence, poor planning, or inappropriate positioning can leave officers vulnerable to attack.

8. In my opinion, a reasonable officer acting consistent with standard police practices and training, confronted with the facts of this incident, would not have made the decision to breach the door at the time Police Officer Taylor Lapoint breached the apartment door. It was not necessary for Police Officer Taylor Lapoint to breach the apartment door at the time that he did. There had not been a report of shot(s) fired at the location at the time of this incident and there were no screams emanating from inside the apartment. The absence of screaming, yelling, or talking would not have led a reasonable Police Officer acting consistent with standard police officer training and practices to believe that there was an elevated level of risk. In my opinion, Police Officer Taylor Lapoint had time to formulate a tactical plan with the other officers and to request additional resources, including Riverside Police Department Supervisor, additional Riverside Police Department Police

Officers, Air Support, K9 and Riverside Police Department Special Weapons and Tactics, (SWAT), to include the Hostage Negotiations Team, (HNT). The Riverside Police Department has highly trained and competent 36-member Special Weapons and Tactics, (SWAT), Team that specifically trains to respond to incidents where a subject(s) may be armed, barricaded and refuses to submit to arrest and well as Hostage Rescue/Emergency Assault Teams/Training in the event a victim is being held hostage. Both the SWAT and CNT teams work in partnership towards a peaceful outcome.

9. In my opinion, if Riverside Police Department Police Officers Taylor Lapoint reasonably believed that when he kicked/breached the front door 807 Blaine Street, Apartment No. 214, Riverside, California 92507, he was going to be possibly confronted with an armed subject(s), he should not have made the poor tactical decision to kick/breach the front door, but rather contain the location and request additional resources to include a Riverside Police Department Supervisor, additional Riverside Police Department Police Officers, Air Support, K9 and Riverside Police Department Special Weapons and Tactics, (SWAT), to include the Hostage Negotiations Team, (HNT).

10. In my opinion, the utilization of Riverside Police Department Special Weapons and Tactics (SWAT) would have been a safer alternative in the event there were armed or potentially armed subjects inside Apartment No. 214 or if Ms. Dezsanee Jones were inside of Apartment No. 214 and was being held hostage and/or being prevented from leaving her residence. SWAT is equipped with special training, equipment, and tools such as: ballistic shields, chemical agents, Sabre Red-16-ounce Stream MK-9 or a similar high-volume Oleoresin Capsicum (OC) Streamer, less than lethal launchers/ projectiles, ballistic/tactical gear, ballistic helmets, and Armored Rescue/Recovery Vehicles (ARV/BEARCAT/BEAR). The actions of first responders can mean the difference of whether a barricaded subject is taken into custody, without escalation of an already difficult situation. Handling

barricaded subjects requires special tools and expertise, which comes from specialized training. The Special Weapons and Tactics (<u>SWAT</u>) team is equipped and trained to resolve these barricaded subject situations.

11. It is my opinion that Riverside Police Department Police Officer Taylor Lapoint made a <u>poor tactical decision</u> to kick/breach the front door of 807 Blaine Street, Apartment No. 214, Riverside, California 92507, while he had his Glock, Model 17, 9mm semi-automatic pistol in his hand. If Riverside Police Department Police Officer Taylor Lapoint reasonably believed Ms. Dezsanee Jones was in immediate peril, he should have immediately requested a bullhorn, a ballistic shield and breaching tools to include a "ram." In addition, once was a Tactical Plan was formulated, the respective Police Officer assigned to breach the front door of Apartment No. 214, would not have his pistol in his or her hand until the door was successfully breached. Riverside Police Department Police Officer Taylor Lapoint's poor tactical decision to breach the door with his pistol in his hand contributed to his overreaction in using deadly force.

12. If Police Officer Taylor Lapoint decided he was not going to wait for additional resources, he should have formulated a plan with Police Officers Michael Smith and Conor Sklarsky who were <u>at scene</u> prior to and at the time that he breached the door. Police Officers Michael Smith and Conor Sklarsky should have been given specific responsibilities to provide lethal and less lethal cover while Police Officer Taylor Lapoint breached the door with his pistol holstered. It is my opinion this would have prevented the unnecessary shooting of Ms. Dezsanee Jones.

13. Police Officers are trained to give a verbal warning, when feasible, that deadly force will be used. It is my opinion that a reasonable Police Officer acting consistent with standard police practices would have given a verbal warning to Ms. Dezsanee Jones that he was going to fire his service weapon. Based upon my review of the facts in this matter, Riverside Police Department Police Officer Taylor Lapoint, did not give a verbal warning to Ms. Dezsanee Jones and give Ms.

Dezsanee Jones a reasonable opportunity to comply prior to firing his Glock Model 17, 9 mm semi-automatic pistol.

14. It is my opinion that a reasonable Police Officer acting consistent with standard police practices would <u>not</u> have used lethal force in the situation confronting Riverside Police Officer Taylor Lapoint at the time he used deadly force against Ms. Dezsanee Jones.

15. A reasonable Police Officer acting consistent with standard police training and practices would have taken the time to assess the situation before using deadly force. It is my opinion that Police Officer Taylor Lapoint failed to take the time to properly assess the situation before using deadly force, the highest level of force available to peace officers. A proper assessment would have quickly revealed that Ms. Dezsanee Jones was unarmed and did not match the description of the suspect as she is a black female and was wearing a black shirt and green pants while the suspect was described as a white male, wearing a white t-shirt and black shorts.

16. It is my opinion that there was a gross lack of situational awareness in this incident. According to Police Officer Taylor Lapoint, he believed that the sounds he heard coming from the apartment could be someone making a last dash to the door and being delayed in getting to the door. According to Police Officer Taylor Lapoint, he did not know where Police Officer Conor Sklarsky was and did not request an update from Police Officer Conor Sklarsky before breaching the door. Police Officer Taylor Lapoint's body worn camera shows that Police Officer Conor Sklarsky was present at the scene and positioned immediately behind Police Officer Michael Smith while Police Officer Taylor Lapoint was communicating with Police Officer Michael Smith immediately prior to breaching the door. Additionally, according to Police Officer Taylor Lapoint, could not identify any attribute of the person at the door prior to firing his Glock Model 17, 9 mm semi-automatic pistol.

//
//

17. Police Officers are trained that subjective fear is insufficient to justify using deadly force. It is my opinion that the objective facts known to Police Officer Taylor Lapoint at the time of the shooting show that Ms. Dezsanee Jones did not present an immediate threat, let alone an immediate threat of death or serious bodily injury to anyone, including Police Officer Taylor Lapoint, at the time she was shot. Ms. Dezsanee Jones did not match the description of the suspect in any way. Ms. Dezsanee Jones is female and Police Officer Taylor Lapoint was aware that the Reporting Party (RP) was female while the suspect was male. Ms. Dezsanee Jones is black and Police Officer Taylor Lapoint believed that the suspect was white. Ms. Dezsanee Jones was wearing a black shirt and green pants and Police Officer Taylor Lapoint was informed that the suspect was wearing a white t-shirt and black shorts. Ms. Dezsanee Jones was unarmed and Police Officer Taylor Lapoint did not see anything that looked like weapon on Ms. Dezsanee Jones. Officer Lapoint also did not believe Ms. Dezsanee Jones was charging or moving towards him at the time of the shooting.

18. It is my opinion the Riverside Police Department Police Officer Taylor Lapoint's use of lethal force violated Police Officer Standards and Training and caused serious bodily injury to Reporting Person (RP) Ms. Dezsanee Jones. Police Officers are trained that deadly force is the highest level of force a Police Officer can use. Police Officers are trained that deadly force can only be used as a last resort. Police Officers are trained that deadly force should only be used in an Immediate Defense of Life situation. Police Officers are trained that deadly force is likely to cause great bodily injury or death. Police Officers are trained that they must show a reverence for human life. Police Officers are trained that they are responsible for justifying every shot. Police Officers are trained that a verbal warning should be given, when feasible, that deadly force will be used. It is my opinion that this was not an Immediate Defense of Life situation and that Police Officer Taylor Lapoint

had other reasonable measures available and failed to exhaust all other reasonable measures before resorting to using deadly force.

19. Police Officers are trained to exercise emotional restraint and self-control. Self-control is maintaining composure to make sound judgments and decisions. Police Officers are also trained that an overreaction in using deadly force is excessive force. It is my opinion that Riverside Police Officer Taylor Lapoint failed to maintain self-control and overreacted when he used deadly force against Ms. Dezsanee Jones. Police Officer Taylor Lapoint's poor tactical decisions, including his decision to breach the door with his pistol in his hand before formulating a safe tactical plan with other police officers on scene, led to his overreaction in intentionally firing his Glock Model 17, 9 mm semi-automatic pistol at Ms. Dezsanee Jones because he was startled by Ms. Dezsanee Jones's presence at the door at the time the door was kicked in. This is supported by statements Police Officer Taylor Lapoint made after the shooting. After the shooting, Police Officer Taylor Lapoint stated, "It was a reaction shot, I boot the door, she was right there," (Body-Worn Camera, (BWC), Police Officer Taylor Lapoint, 1/2, (7:17). Additionally, it should be noted that Police Officer Taylor Lapoint testified at his deposition that he intentionally pressed the trigger of his Glock Model 17, 9 mm semi-automatic pistol and intended to strike the person behind the door, who turned out to be the Reporting Party (RP), Ms. Dezsanee Jones.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 18th day of December 2023 in Huntington Beach, California.

_____

Scott DeFoe